IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION


JAMES MONTGOMERY                                    PLAINTIFF

VS.                      CIVIL ACTION NO. 5:05-cv-217(DCB)(JMR)

STATE OF MISSISSIPPI, CITY OF VICKSBURG,
LAURENCE E. LEYENS, IN HIS UNOFFICIAL
AND OFFICIAL CAPACITY AS MAYOR,
SIDNEY H. BEAUMAN, IN HIS UNOFFICIAL
AND OFFICIAL CAPACITY AS ALDERMAN                   DEFENDANTS


MEMORANDUM OPINION AND ORDER

This cause is before the Court on the motion for summary judgment **(docket entry 27)** filed by defendants City of Vicksburg, and Laurence E. Leyens and Sidney Beauman in their individual and official capacities. Having carefully considered the motion, response and memoranda, as well as all exhibits attached thereto, and being otherwise fully advised in the premises, the Court finds as follows:

Plaintiff James Montgomery, a fireman employed by the City of Vicksburg, filed suit in December of 2005 alleging, <u>inter</u> <u>alia</u>, that he was demoted in violation of his First Amendment rights. On August 10, 2006, the plaintiff filed an amended complaint adding the State of Mississippi as a defendant. The City of Vicksburg, Laurence E. Leyens and Sidney Beauman move for summary judgment.

I.  **Summary Judgment Standard**

A motion for summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue of

material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party has the initial burden of identifying relevant portions of the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A contested fact is "material" when it has the potential to change the outcome of the case.  Ginsburg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  An issue is "genuine" if "the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party."  Id.  A motion for summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The moving party has the initial burden of identifying relevant portions of the record, including  the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

If the moving party sustains its burden, the burden shifts to the nonmoving party to show with "significant probative evidence"

that a genuine issue as to a material fact actually exists. Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994). To overcome summary judgment, the nonmoving party must do more than simply rely on the pleadings or merely rest "upon conclusory allegations, improbable inferences, and unsupported speculation." Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1449 (5th Cir. 1993). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-movant must "designate specific facts showing the existence of a genuine issue for trial." Anderson, 477 U.S. at 250. "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Id. at 252. Moreover, the nonmoving party must make a showing sufficient to establish the existence of an essential element of its case, an element on which it will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In light of the facts presented by the nonmoving party, along with any undisputed facts, this Court must decide whether the moving party is entitled to judgment as a matter of law. When deciding a motion for summary judgment, the evidence submitted by the nonmoving party is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the party opposing summary judgment. Anderson, 477 U.S.

at 255.  The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence,  ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980).  Summary judgment is improper where the court merely believes it unlikely that the nonmovant will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).  By contrast, summary judgment for the moving party is only proper when a rational jury, looking at the record as a whole, could not find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II.  **The Facts of the Case**

On April 10, 2005, the Vicksburg Post published the following letter on its "Letters to the Editor" page:

A city employee needs to be thinking about "what type of boss would I like to have for the next four years?" All city employees need to examine the mayor and alderman candidates before they vote!

Mayor Leyens appreciated the city employees by giving them a pay raise.  The other night I was watching a county board meeting on Channel 23. Michael Mayfield and Charles Selmon said during this meeting, "I do not care if a county employee is evaluated on his or her work performance or are awarded incentives!" Michael Mayfield said, "I give the county employees a paycheck that is good enough for them!"  If elected, these two candidates would treat city employees with out any appreciation, evaluations or incentives.  You can watch these two on Channel 23 with your own eyes!

If I were a city employee, I would want to be appreciated, evaluated on my work performance yearly and, most importantly, be awarded with incentives.  I would

vote for Mayor Leyens because at least he appreciates his
employees enough to reward them with a raise.

   If you vote for Selmon or Mayfield, these two are just
doing the employee a favor by giving him or her a
paycheck.   These two candidates would not want to be
treated like that!  City employees, vote not for color
but for right or wrong!

Lisa Langley

The elections to which the letter referred were the City of
Vicksburg's upcoming municipal elections, including the general
election to be held on June 7, 2005.  On April 14, 2005, the
Vicksburg Post published the following letter written by the
plaintiff, James Montgomery, in response to Langley's letter:

   This is in response to the letter written by Ms. Lisa
Langley in the Vicksburg Post on Sunday.  Ms. Langley
stated that Mayor Leyens appreciated the city employees
and showed this by giving them all pay raises.  Well,
this fact is not entirely true.

   It may be true for all the department heads, but it
surely isn't true for the vast majority of the city
employees, especially for the fire department.

   I am a captain on the fire department and I haven't
received any such pay raise!  In fact, none of the
captains, lieutenants or privates have received any such
pay raises.  We can't even get a cost-of-living raise
because the mayor is against across-the-board pay raises.

   Now, this comes from an administration that voted for
their own pay raises and gladly accepted them.  Is that
not an across-the-board pay raise?  This is also from a
man who when he first took office stated that he knew
full well what the job of mayor paid and would not accept
a pay raise.  This administration has voted on pay raises
and accepted them.  They even have a percentage raise
that will automatically go into effect every few years
for them.

   Now tell me how the mayor can be against across-the-

board pay raises when all his raises are across-the-board?  We all have to pay the same high prices for gasoline and food as the mayor and aldermen do, but we can't offset our costs like they can.

   I sincerely hope that the next mayor will be more considerate of his employees when he takes office.  Ms. Langley did make a statement in her article that I also agree with and that was that all city employees should vote for what they feel is right in this upcoming election.  This is why the present administration shall not receive my vote.

James Montgomery

On April 19, 2005, Fire Chief Keith Rogers and Director of Human Resources Lamar Horton met with Montgomery concerning the letter.  Deposition of James Montgomery, p. 27; Deposition of Keith Rogers, p. 56; Transcript of Testimony of Lamar Horton at Appeal Before Civil Service Commission, September 28, 2005, p. 106.  After the meeting, Horton wrote the following memo to Montgomery's Personnel file:

   Chief Rogers and myself met with Captain Montgomery today to review his April 10th letter to the Editor.

   I pointed out that the Civil Service laws of the State of Mississippi, clearly prohibit the "active participation in political activities".  The letter that Captain Montgomery wrote clearly falls in to that category.  I informed Captain Montgomery that we would be conducting a full investigation and farther [sic] disciplinary actions could result.

   We also reviewed the issues raised by Captain Montgomery, such as, cost of living raises, tier raises and the tier system, the performance reviews and why they are done.

Inter-Department Memorandum from Lamar Horton, April 19, 2005.

   Subsequently, Chief Rogers recommended to the Mayor and Board

of Aldermen that Montgomery be demoted to the rank of lieutenant along with a two-shift suspension, as set forth in a July 28, 2005, letter from Chief Rogers to Montgomery.  The letter listed the following grounds for the demotion:

On April 14, 2005, you wrote a letter to the editor of the Vicksburg Post in response to a letter written by Lisa Langley.  Within this letter you deliberately misled the citizens of Vicksburg by making false statements.

You misled the public to believe that neither you nor any fire department employees have received raises when, in fact at the time you wrote the letter, you had already received a 9 percent pay adjustment on May 16, 2002.  This adjustment equaled a little more than $3,000 a year, and that does not include the longevity increase you received in April 2004.

Furthermore, you identified yourself as a captain on the Vicksburg Fire Department and expressed your political views within this public document when you wrote "I sincerely hope that the next mayor will be more considerate of his employees when he takes office."  You expressed your political views again when you wrote "This is why the present administration shall not receive my vote."  Although you did not openly endorse a candidate, you did identify yourself as a captain of the Vicksburg Fire Department and made it clear to the public you would not endorse the present administration.

Finally, you deliberately misled the public into believing that you could vote in municipal elections when you reside outside the city limits.  You wrote "This is why the present administration shall not receive my vote."

This willful misconduct and insubordination on your part has resulted in a loss of credibility and has tarnished your integrity.  Your actions were clearly intended to influence the public's decision during the election

process.

Civil Service Rules and Regulations allow for an individual to privately express his or her political opinions; however, by having a letter to the editor published in the Vicksburg Post and by identifying yourself as a captain of the Vicksburg Fire Department you clearly violated the intent of these rules. Therefore, on August 1, 2005, I will present to the Board of Mayor and Aldermen the following charges.

**<u>Violations of Civil Service Rules and Regulations</u>:**

**Rule I**
**Political Activities**
1.13 – 1.15
Rule 1.16 indicates actions for violations
Rule 1.17 indicates the employee's right to express
    privately his opinion on all political subjects

**Rule XII**
**Removal, suspension, Demotion, and Discharge**
12.2 b
12.2 c
12.2 f
12.2 I
12.2 l
12.2 p

**<u>Violations of Vicksburg Fire Department Standard Operating Guidelines</u>**

12.1.64
12.1.65
12.1.70
12.1.8
12.4.10 Major violations L

Letter from Chief Rogers to Montgomery, pp. 1–2.

Attached to Chief Rogers' letter were excerpts from the Civil Service Commission Rules & Regulations Handbook, and the Vicksburg Fire Department Standard Operating Guidelines, which provide, in relevant part:

8

[**Civil Service Commission Rules & Regulations Handbook**]

...

**Political Activities.**

    1.13  No person in the Classified Service or on the eligible lists shall use or attempt or cause to be used political influence or the improper influence of any State, County, or City employee or officer in securing appointment, promotion, transfer, leave of absence, increased pay or other advantages for himself or for any other public employee or officer.

    1.14  No person in the Classified Service shall engage in any form of political activity calculated to favor or improve the chances of any political party or any person seeking or attempting to hold public office or party office.  No person in the Classified Service shall use his influence or official authority for the purpose of interfering with or affecting the management or political campaigns in connection therewith, whether then begun or merely anticipated, nor shall any person in the Classified Service serve as a public election official in any general, special, primary or municipal election.

    1.15  No person in the Classified Service shall give or pay or promise to give or pay, directly or indirectly, any endorsement, assessment, subscription, or contribution, or shall such person in the Classified Service solicit or take any part in soliciting any such endorsement, assessment, subscription, contribution, or political service.  No person shall solicit any such endorsement, assessment, subscription, contribution or political service of any employee in the Classified Service.

    1.16  The violation of any of the provisions of Sections 1.13 through 1.15 of these rules, by any classified employee, shall be grounds for the dismissal or demotion of such employee, and shall be in addition to any other grounds provided for.  The violation of any of these provisions by any person in the eligible lists shall be grounds for the removal of such person from such eligible lists.

    1.17 Nothing contained in these rules or in the Act shall be construed as affecting the rights of classified

employees to vote as they please and to express privately
their opinions on all political subjects.

Civil Service Rules & Regulations Handbook, pp. 7-8.

[**Civil Service Commission Rules & Regulations Handbook**]

RULE XII
REMOVAL, SUSPENSION, DEMOTION, AND DISCHARGE

**Policy**

12.1   It is declared to be the policy of the
Commission to support the appointing authorities in
enforcing discipline and in demanding courteous and
efficient service from public employees.

Tenure of office and manner of removal, suspension,
demotion, and discharge.

12.2   The tenure of persons holding a permanent
civil service position under civil service shall be only
during good behavior; and any such person may be removed
or discharged, suspended without pay, demoted, or
deprived of vacation or other privileges for any of the
causes hereinafter enumerated, or for any other act of
omission or commission tending to injure the public
service; but such removal, demotion, suspension,
discharge, or other disciplinary action shall be effected
only in accordance with the provisions of Section 21-31-
23 of the Mississippi Code of 1972, as amended, except
such persons who were employed to fill a vacancy caused
by the absence of a fireman or policeman having entered
the armed forces of the United States.

Any appointing authority, citizen, or taxpayer may,
for any of the reasons stated below or for other just
reasons, initiate the procedure to cause any employee
under civil service to be removed, suspended, demoted, or
discharged but only in the manner provided by Section 21-
31-23 of the Mississippi Code of 1972, as amended.

Complaints relating to conduct of any civil service
employee may be made by any responsible person to the
appointing authority or to the head of the department,
board, or office in which such employee holds a position,
but all such complaints, if a hearing thereon before the

10

Commission is desired, must also be made in writing to the Commission as provided by Rule 12.7.  If a written complaint is made to such appointing authority, the Department Head or person receiving the written complaint shall make written report of the same to the Commission, and such report shall be and become part of said employee's service record.

The following are to be considered causes for removal, demotion and suspension of an officer or employee from the civil service of the City although removals may be based upon causes other than these enumerated:

...

(b) Willful violation of any of the provisions of the Civil Service Act or the rules promulgated by the Vicksburg Civil Service Commission.

(c) Willful violation of any lawful and reasonable regulation, order, or direction made or given by a superior officer where such a violation has amounted to insubordination or serious breach of proper discipline or has resulted in loss or injury to the public.

...

(f) Wantonly offensive conduct or language toward the public or fellow officers or employees.

...

(I) Aiding in assessment or collection from any officer or employee in the service of the City for the purpose of securing the nomination or election of any person to municipal office or for the purpose of making a gift to any elective officer or superior officer in the City's employ.  No employee under civil service shall engage in any political campaign as a representative of any candidate or engage in any pernicious activities.

...

(l) Conduct unbecoming to an officer or employee of the City, either while on or off duty.

...

11

(p) Failure to meet standards set for employees.

Civil Service Rules & Regulations Handbook, pp. 23-25.

[**Vicksburg Fire Department Standard Operating Guidelines**]

...

12.1.64 Members shall not violate any trust or confidence placed upon or accepted by them regarding confidential matters or any information that would be detrimental, embarrassing, or would cause conflict with or to any member of the department or to the City of Vicksburg. Failure to comply shall subject the member to immediate disciplinary action including suspension, demotion or termination.

...

12.1.65 Members shall not become involved with, or a party to, any conspiracy against the City of Vicksburg, the Fire Department, or any member thereof.  Failure to comply shall subject the member(s) to disciplinary action including suspension, demotion or termination.

...

12.1.70 Members shall not release information unless approved by the proper authority.

...

12.3.8 Employees shall not willfully misrepresent or falsify any matter, verbally or in writing.

...

12.4.10 Disciplinary action shall be corrective in nature and shall involve the following progressive measures, except that major violations may proceed to more severe actions which could include termination:

      A.   Documentation of oral reprimand
      B.   Written reprimand
      C.   Suspension, documentation in writing
      D.   Demotion
      E.   Termination

Major violations include, but shall not be limited to:

...

  L.  Making false statements

Vicksburg Fire Department Standard Operating Guidelines.

On August 4, 2005, the Mayor and Board of Aldermen held an executive session and hearing concerning Chief Rogers' recommendation.  Mayor Leyens and Alderman Beauman voted to give the plaintiff a reduction in rank from captain to lieutenant, and a two-shift suspension.  Amended Complaint, ¶ 13; Deposition of James Montgomery, p. 20.  Lamar Horton, the Human Resource Director, wrote the following letter to Montgomery:

RE: Notice of suspension and Demotion of Civil Servant

Mr. Montgomery:

The Board of Mayor and Aldermen met in Executive Session during a regular called Board Meeting on August 4, 2005, to review the request of Fire Chief Keith Rogers to suspend and demote you for violation of Vicksburg Fire Department's Standard Operating Guideline 12.1.64, 12.1.65, 12.1.70, 12.3.8 and 12.4.10 Major Violations L and violation of Civil Service Rules and Regulations, rule 1, 1.13-1.15, 1.16, 1.17 and Rule XII, 12.2(b), (c), (f), (I), (l) and (p).  You and Chief Rogers appeared before the Board and presented testimony.

At the conclusion of the testimony, the Mayor and Aldermen upheld the recommendation of Chief Rogers that you be demoted from the rank of captain to lieutenant and suspended for a two-shift suspension without pay.  Chief Rogers will notify you of the date(s) of your suspension.

...

Letter from Lamar Horton to James Montgomery, August 4, 2005.

Also on August 4, 2005, Montgomery requested an appeal of the Mayor and Board of Aldermen's decision to the Civil Service Commission. Amended Complaint, ¶ 13. On September 28, 2005, after receiving evidence and testimony, the Civil Service Commission upheld the Mayor and Board of Aldermen's decision. The Order issued by the Commission included the following findings:

3

That the disciplinary action approved by the Board of Mayor and Aldermen of the City of Vicksburg was not for political reasons.

4

That the unanimous decision of the Commission was that James Montgomery is a civil servant covered by the Rules of Civil Service.

That, as a civil servant, James Montgomery was involved in political activity in violation of the Rules of Civil Service as set forth by the Vicksburg Civil Service Commission and the Mississippi Code of 1972, as amended.

5

That disciplinary action against James Montgomery was, therefore, made in good faith and for good cause.

Order of Civil Service Commission in James Montgomery vs. The City of Vicksburg, October 3, 2005.

The plaintiff filed this action on December 6, 2005, and amended his complaint on August 10, 2006. In his Amended Complaint, Montgomery sets forth the following causes of action:

In paragraph 15, the plaintiff asserts that "Miss. Code Ann.

14

§ 21-31-27[1] is unconstitutional as it is vague and ambiguous since it does not define what active participation is and presumably allows firefighters and police officers to vote in primary and other municipal elections." Amended Complaint, ¶ 15.

Paragraph 16 asserts that "Miss. Code Ann. § 21-31-27 is unconstitutional as applied to James Montgomery's situation because it limits his ability to assert his constitutional rights, such as James Montgomery's freedom of association and freedom to engage in political speech and activity.  The plain language of the statute does not prohibit James Montgomery from writing a letter to the editor and should not be grounds for demotion." Amended Complaint, ¶ 16.

---

[1] Mississippi Code Section 21-31-27 provides:

**Political services and contributions.**

No person holding any office, place, position or employment subject to civil service, is under any obligation to contribute to any political fund or to render any political service to any person or party whatsoever, and no person shall be removed, reduced in grade or salary, or otherwise prejudiced for refusing so to do.  No public officer, whether elected or appointed, shall discharge, promote, demote or in any manner change the official rank, employment or compensation of any person under civil service, or promise or threaten so to do, for giving or withholding, or neglecting to make any contribution of money, or service, or any other valuable thing, for any political purpose.

If any person holding any office, place, position or employment subject to civil service, actively participates in political activity in any primary or election in a municipality where he is employed, it shall be deemed cause for removal.

Paragraph 17, which is titled "Interfering, Restraining, Coercing, and Retaliating Against James Montgomery," states: "The defendant's practice of interfering with, restraining, and coercing employees exercising his [sic] guaranteed [sic] in the First Amendment, Fifth Amendment, Fourteenth, Section 2, and Fifteenth Amendments to the United States Constitution and Article 3 of Section 4[2] of the Mississippi Constitution." Amended Complaint, ¶ 17.

Paragraph 18, titled "Count IV – Wrongful Demotion," states: "The defendants' practice of demoting employees who exercise their rights guaranteed under law is prohibited, against public policy, and constitutes wrongful demotion." Amended Complaint, ¶ 18.

In the Pretrial Order, the parties have agreed to a statement of the plaintiff's claims as follows:

> 4. Plaintiff asserts that Defendants, City of Vicksburg, Laurence Leyens, and Sidney H. Beauman, wrongfully demoted him and interfered, restrained, coerced and retaliated against him in violation of the First, Fifth, Fourteenth, and Fifteenth Amendments to the United States Constitution and Article 3 Section 4[3] to [sic] the Mississippi Constitution.
>
> 5. The basis for the court's jurisdiction is: 28 U.S.C. § 1331, 42 U.S.C. § 1343, and supplemental jurisdiction under 28 U.S.C. § 1367.

Pretrial Order, ¶¶ 4-5. In addition to the claims set forth in

---

[2] The freedom of speech provision of the Mississippi Constitution is found in Article 3, Section 13, not Section 4.

[3] See footnote 2.

paragraph 4 of the Pretrial Order, the parties list under contested issues of law and fact, _inter_ _alia_:

> whether the plaintiff can establish a claim pursuant to Section 2 (Pretrial Order, ¶¶ 9(b)(1), 9(c)(1));

> whether the plaintiff was denied equal protection in violation of his Fourteenth Amendment rights (Pretrial Order, ¶¶ 9(b)(4), 9(c)(4);

> whether the defendants violated the plaintiff's right of association (Pretrial Order, ¶¶ 9(b)(6), 9(c)(6));

> whether a municipal policy led to the plaintiff's alleged constitutional violations (Pretrial Order, ¶¶ 9(b)(7), 9(c)(7);

> whether the plaintiff's claims are barred by the Mississippi Tort Claims Act pursuant to Miss. Code Ann. 11-46-11 (Pretrial Order, ¶¶ 9(b)(8); 9(c)(8);

> whether the plaintiff can establish that he was wrongfully demoted pursuant to state law (Pretrial Order, ¶¶ 9(b)(9), 9(c)(9);

> whether the defendants are liable for the plaintiff's supplemental state law claims pursuant to Article 3 Section 4[4] of the Mississippi Constitution (Pretrial Order, ¶¶ 9(b)(11), 9(c)(11).

The Court therefore examines each of the plaintiff's claims as set forth in the Amended Complaint and Pretrial Order.

## III.  State Law Claims

The plaintiff alleges a claim for "wrongful demotion" under state law.  Amended Complaint, ¶ 18; Pretrial Order, ¶¶ 9(b)(9), 9(c)(9).  The Mississippi Tort Claims Act (MTCA) sets forth procedures a claimant must follow in order to assert a claim

---

[4] See footnote 2.

against a governmental entity.  The relevant rule states:

> After all procedures within a governmental entity have
> been exhausted, any person having a claim for injury
> arising under the provisions of this chapter against a
> governmental entity or its employee shall proceed as he
> might in any action at law or in equity; provided,
> however, that ninety (90) days prior to maintaining an
> action thereon, such person shall file a notice of claim
> with the chief executive officer of the governmental
> entity.

Miss. Code Ann. § 11-46-11(1).  In addition, the statute provides
that the notice "shall be in writing, and shall be delivered in
person or by registered or certified United States mail."  Miss.
Code Ann. § 11-46-11(2).  In this case, it is undisputed that
Montgomery failed to provide any notice, let alone the prescribed
ninety-day notice.  In University of Mississippi Medical Center v.
Easterling, 928 So.2d 815, 819-20 (Miss. 2006), the Mississippi
Supreme Court adopted a "strict compliance" standard regarding the
ninety-day notice requirement of the MTCA.  Service of a complaint
obviously cannot substitute for notice under the MTCA, since the
ninety-day period must precede the filing of the complaint.  Id. at
819.  Even under the "substantial compliance" standard in effect
prior to Easterling, such an argument would be rejected.  Whiting
v. Tunica County, 222 F.Supp.2d 809, 825 (N.D. Miss. 2002).
Because Montgomery failed to provide any notice whatsoever, the
Court finds that all state law tort claims for "wrongful demotion"
are procedurally barred due to his failure to comply with the
notice provisions of the MTCA.

18

The Court now proceeds to examine if any of Montgomery's state law claims fall outside of the MTCA. In <u>City of Grenada v. Whitten Aviation</u>, 755 So.2d 1208 (Miss. Ct. App. 1999), the Mississippi Court of Appeals held that the MTCA does not apply to "pure contract actions," since entering into a contract waives sovereign immunity from suits brought to enforce the contract. <u>Id</u>. at 1213. Claims for tortious breach of contract, however, fall within in the MTCA. <u>Id</u>. The Mississippi Court of Appeals has also held that "[w]rongful discharge actions, not founded on some theory of contract essentially sound in tort, although some of the theories have attributes associated with both contract and tort." <u>Hancock Bank v. Ladner</u>, 727 So.2d 739, 743 (Miss. Ct. App. 1998).

Montgomery's claim of "wrongful demotion" would seem to be subject to the same principle, <u>i.e.</u>, in order to fall outside of the MTCA, Montgomery's claim must be based on some theory of contract. In <u>Hensley v. E.R. Carpenter Co., Inc.</u>, 633 F.2d 1106 (5th Cir. 1980), the Fifth Circuit Court of Appeals made an <u>Erie</u> guess that Mississippi courts would recognize a "wrongful demotion claim" based on contract in certain circumstances:

> Although the Mississippi courts have not to our knowledge specifically decided whether an unjustified reduction in rank conferred by an employment contract can constitute a breach of that contract, the weight of authority in other jurisdictions is that it can. 53 Am.Jur.2d Master and Servant § 44 (1970); Annot., 63 A.L.R.3d 539 (1975). Absent evidence to the contrary, we presume that the Mississippi courts would adopt the prevailing rule if called upon to do so. <u>United States v. Southeast Mississippi Livestock Farmers Association</u>, 619 F.2d 435,

437, 439 (5th Cir. 1980).

Id. at 1109.

Mississippi recognizes the common law employment-at-will doctrine, which provides that in the absence of an employment contract, either party may terminate the employment relationship at will.[5] Perry v. Sears, Roebuck & Co., 508 So.2d 1086, 1088 (Miss. 1987). Thus, either the employer or the employee may have a good reason, a wrong reason, or no reason at all for terminating the employment relationship. It follows that the absence of a contract would defeat not only a claim for wrongful termination, but a claim for wrongful demotion as well. See Cothern v. Vickers, Inc., 759 So.2d 1241, 1247-1249 (Miss. 2000).

The Mississippi Supreme Court "has held that contractual obligations may arise from, and an employment contract may be modified by, a personnel or pension manual or other representations." Id. at 1248 (citing Bobbitt v. Orchard, Ltd., 603 So.2d 356 (Miss. 1992)). A personnel manual can also create contractual obligations even in the absence of a written agreement. Perry, 508 So.2d at 1088. Thus, an employee manual can "create an obligation on the part of [the employer] to follow its provisions

---

[5] There are two exceptions to the employment-at-will doctrine, carved out by the Mississippi Supreme Court in McArn v. Allied Bruce-Terminix Co., 626 So.2d 603 (Miss. 1993): An employee may bring a cause of action for wrongful termination if he is fired for (1) refusing to commit an illegal act, or (2) reporting his employer's illegal act. Id. at 607. The plaintiff does not allege that either of these exceptions applies in his case.

in reprimanding, suspending or discharging an employee for infractions specifically covered therein." <u>Bobbitt</u>, 603 So.2d at 361. "[T]his obligation would encompass the action of a demotion, which is more drastic than a reprimand but less drastic than a discharge." <u>Dandridge v. Chromcraft Corp.</u>, 914 F.Supp. 1396, 1405 n.3 (N.D. Miss. 1996).

The defendants, in their motion for summary judgment, allege that Montgomery is an at-will employee. However, the Civil Service Commission Rules & Regulations Handbook provides tenure for "persons holding a permanent civil service position," and provides that any "removal, demotion, suspension, discharge, or other disciplinary action shall be effected only in accordance with the provisions of Section 21-31-23 of the Mississippi Code of 1972, as amended ...." Civil Service Commission Rules & Regulations Handbook, Rule XII, 12.2. Mississippi Code Section 21-31-23 provides:

> No person in the classified civil service who shall have been permanently appointed or induced into civil service under the provisions of Sections 21-31-1 through 21-31-27, except for such persons as may be employed to fill a vacancy caused by the absence of a fireman or policeman while in service as a member of the armed forces of the United States, shall be removed, suspended, demoted or discharged, or any combination thereof, except for cause ....

Miss. Code Ann. § 21-31-23. The Mississippi Supreme Court has held that Mississippi's "Civil Service Law created a new right, which was unknown to the common law ...." <u>Scott v. Lowe</u>, 78 So.2d 452,

455 (Miss. 1955).

Montgomery's wrongful demotion claim thus turns on whether he was a person "holding a permanent civil service position." To state a claim for wrongful demotion, he must show that language in the relevant employee handbooks, manuals or regulations "created certain contractual rights sufficient to create an exception to the at-will employment doctrine." Kegley v. Abel, 1998 WL 378398, *2 (N.D. Miss. April 17, 1998). The language of Rule XII, 12.2 in the Civil Service Commission Rules & Regulations Handbook would seem to create such an exception, allowing a cause of action for wrongful demotion without cause or without an appropriate hearing. Since, in addition to their defense based on the MTCA, the defendants argue only that Montgomery's employment status was at-will, summary judgment must be denied as to the plaintiff's wrongful demotion claims which do not fall under the MTCA.

The plaintiff's remaining state law claim is for violation of his right to free speech under Article 3, Section 13 of the Mississippi Constitution of 1890. Amended Complaint, ¶ 17; Pretrial Order, ¶¶ 4, 9(b)(11), 9(c)(11).[6] Neither party has argued whether the Mississippi Constitution provides the same protection as, or greater protection than, the United States Constitution. The Court has not found a single Mississippi case that interprets Article 3, Section 13 to be more expansive than the

_____

[6] See footnote 2.

22

First Amendment.   However, even if the Mississippi Constitution grants broader protection to speech than does the United States Constitution, Montgomery has not included in his brief any argument concerning how this broader scope affects his claims.

In addition, Mississippi courts have not recognized an implied right of action for damages against governmental entities arising under the free speech section of the Mississippi Constitution.  See Kenyatta v. Moore, 623 F.Supp. 220, 224 (S.D. Miss. 1985)("No private cause of action and damage remedy has ever been implied from the Mississippi Constitution.").   No Mississippi statute or case provides its citizens the kind of redress afforded by 42 U.S.C. § 1983 or by Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).  See Montgomery v. Hughes, 716 F.Supp. 261, 268 (S.D. Miss. 1988)(recognizing but not deciding "the novel question of whether any civil cause of action exists for violations of the free speech and due process clauses of the Mississippi Constitution").

As for relief other than damages, there is at least a possibility that Mississippi courts would recognize a cause of action under Article 3, Section 13 for reinstatement or other equitable relief.  See Claiborne County Board of Education v. Martin, 500 So.2d 981, 985 (Miss. 1986)(recognizing that "public school employees are entitled to exercise rights protected by the First Amendment to the Constitution of the United States and by

23

Article 3, Section 13 of the Mississippi Constitution of 1890 without fear that their employment will be terminated or adversely affected"). The Court need not address the issue of remedies under the state constitution, however, because in the absence of any claim that the Mississippi Constitution provides broader protection than the First Amendment, the plaintiff's state law freedom of speech claims can be adequately analyzed under the First Amendment. See Finch v. Fort Bend Independent School Dist., 333 F.3d 555, 563 (5th Cir. 2003)(analyzing plaintiff's free speech claims under the United States Constitution where plaintiff did not argue how the broader scope of the Texas Constitution affected her claims).

Finally, Montgomery attacks the constitutionality of Mississippi Code Section 21-31-27 on the basis of the freedom of speech clause of the Mississippi Constitution as well as the First Amendment to the United States Constitution. That claim is not before the Court on the defendants' summary judgment motion.

**IV.   <u>Federal Claims</u>**

While the plaintiff does not state the statutory grounds for his federal constitutional claims, these claims are properly brought under 42 U.S.C. § 1983. Congress enacted § 1983 as "a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution." Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 305-06 (1986). Section 1983 provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory
> or the District of Columbia, subjects or causes to be
> subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation
> of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress.

42 U.S.C. § 1983.  A plaintiff asserting a claim under § 1983 generally must prove (1) a violation of rights protected by the Federal Constitution or created by federal statute or regulation (2) proximately caused (3) by the conduct of a "person" (4) who acted "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia."  42 U.S.C. § 1983.  The parties do not contest that the "under color of state law" requirement is met in this case.

"Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights."  Bauer v. Texas, 341 F.3d 352, 357 (5th Cir. 2003)(citing Albright v. Oliver, 510 U.S. 266 (1994)).  Thus, a § 1983 plaintiff must allege an independent substantive basis for relief.  He must first identify a protected life, liberty, or property interest, and then show how government action resulted in a deprivation of that interest.  Baker v. McCollan, 443 U.S. 137, 140 (1979).  Section 1983 does not provide a right to be free of injury whenever a government actor may be characterized as a tortfeasor.  Paul v. Davis, 424 U.S. 693, 701 (1976).

Although pleadings are to be construed liberally, "where a right or immunity created by the Constitution or laws of the United States is an essential element of the cause of action, it is incumbent upon the plaintiff to adequately and properly allege jurisdictional facts according to the nature of the case." <u>Dewell v. Lawson</u>, 489 F.2d 877, 879 (10th Cir. 1974) (<u>citing</u> <u>Pan American Petroleum Corp. v. Superior Court of Delaware</u>, 366 U.S. 656 (1961); <u>Bowman v. White</u>, 388 F.2d 756 (4th Cir.), <u>cert. denied</u>, 393 U.S. 891 (1968); <u>Ivey v. Frost</u>, 346 F.2d 115 (8th Cir. 1965).

## A.   **Fifteenth Amendment**

The Fifteenth Amendment of the United States Constitution provides that "[t]he right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of race, color, or previous condition of servitude."  The plaintiff has failed to plead any facts which would show that the defendants interfered with his right to vote. Because he has failed to allege any abridgement of the right to vote "on account of race, color, or previous condition of servitude," his claim under the Fifteenth Amendment shall be dismissed.

## B.   **Fifth Amendment**

The Fifth Amendment of the United States Constitution is applicable only to violations of constitutional rights by the United States or federal actors.  <u>See</u> <u>Jones v. City of Jackson</u>, 203

F.3d 875, 880 (5th Cir. 2000).  The plaintiff has not alleged that any of the defendants were acting under the authority of the federal government.  Therefore, the defendants are entitled to summary judgment on the plaintiff's Fifth Amendment claims. Because the Fourteenth Amendment applies to due process violations by state actors, the Court will analyze Montgomery's claim under the Fourteenth Amendment.

###### C.   **Article IV, Section 2**

Montgomery's Amended Complaint alleges a claim under "Section 2," which the Court construes as a claim under Article IV, Section 2 of the United States Constitution, providing that "[t]he citizens of each State shall be entitled to all privileges and immunities of citizens in the several States."  This clause "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy."  <u>Toomer v. Witsell</u>, 334 U.S. 385, 395 (1948).  The plaintiff does not claim that he was discriminated against because of his citizenship; therefore, Title IV, Section 2 is not applicable to this case. Because the Fourteenth Amendment also includes a "privileges and immunities" clause, the Court shall analyze Montgomery's claim under the Fourteenth Amendment.

###### D.   **Fourteenth Amendment**

###### 1.   **Privileges and Immunities**

Under the Privileges and Immunities Clause of the Fourteenth

Amendment, "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."  In this case, Montgomery has stated a claim under the Privileges and Immunities Clause in that he alleges that Mississippi Code Section 21-31-27 is unconstitutional, on its face and as applied to his situation, as an abridgment of his First Amendment rights.  The defendants' motion for summary judgment does not speak to this claim, thus summary judgment is not warranted.

### 2.  **Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  "[A] violation of equal protection occurs only when the government treats someone differently than others similarly situated; if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action – even if irrational – does not deny them equal protection of the laws."  Brennan v. Stewart, 834 F.2d 1248, 1257 (5th Cir. 1988).

Montgomery has not alleged that the defendants distinguished between two or more relevant persons or groups.  Nor has he submitted any evidence that he was "selectively treated," i.e., that the defendants "selected a course of action 'because of' its detrimental effects on an identifiable group."  Wayte v. United

28

States, 470 U.S. 598, 610 (1985).  The defendants are therefore entitled to summary judgment on the equal protection claim.

    3.  **Due Process**

In Zinermon v. Burch, 494 U.S. 113 (1990), the United States Supreme Court recognized three kinds of § 1983 claims that may be brought under the Due Process Clause of the Fourteenth Amendment.

"First, the Clause incorporates many of the specific protections defined in the Bill of Rights.  A plaintiff may bring suit under § 1983 for state officials' violation of his rights to, e.g., freedom of speech or freedom from unreasonable searches and seizures."  Id. at 125.

"Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'"  Id. (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)).

"The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure.  A § 1983 action may be brought for a violation of procedural due process ...."  Id.

    a.  **Procedural Due Process**

With the first two types of claims, "the constitutional violation actionable under § 1983 is complete when the wrongful action is taken."  Id.  With procedural due process, however, "the deprivation by state action of a constitutionally protected

29

interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest <u>without due process of law</u>." <u>Id</u>. (citing <u>Parratt v. Taylor</u>, 451 U.S. 527, 537 (1981)). "The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." <u>Id</u>. at 126.

In this case, Montgomery does not assert any procedural due process rights other than those given to him. Therefore, the defendants are entitled to summary judgment on the procedural due process claim.

**b.   <u>Substantive Due Process (Property Interest)</u>**

As a general matter, a substantive due process claim in the public employment context requires the plaintiff to show: (1) that the employee "had a property interest/right in his employment;" and (2) that the "employer's termination of that interest was arbitrary or capricious." <u>Moulton v. City of Beaumont</u>, 991 F.2d 227, 230 (5th Cir. 1993). A property interest in employment may be created by statute or by contract. The existence of a property interest in employment is determined by state law. <u>Rathjen v. Litchfield</u>, 878 F.2d 836, 838 (5th Cir. 1989); <u>Bishop v. Wood</u>, 426 U.S. 341, 344 (1976). To establish a property right in employment, a public employee must show a "legitimate right to continued employment." <u>Conner v. Lavaca Hosp. Dist.</u>, 267 F.3d 426, 437 (5th Cir. 2001).

As discussed in relation to the plaintiff's state law claims, Mississippi Code Section 21-31-23 creates vested permanent employment rights under Mississippi's civil service laws. The defendants have failed to offer any evidence that Montgomery was not a "permanent" employee under the civil service laws. Thus, it would seem that Montgomery has a legitimate claim to continued employment under a source independent of the Fourteenth Amendment, and can maintain a substantive due process claim based on that property right.

### c.  <u>Substantive Due Process (Liberty Interest)</u>

Although the Bill of Rights do not apply to the states and their subdivisions directly, they have been incorporated into the due process clause of the Fourteenth Amendment and are thus applicable to the states. <u>Zinermon</u>, 494 U.S. at 125; <u>NAACP v. Alabama ex rel. Patterson</u>, 357 U.S. 449, 460 (1958). Thus, a government

> may not deny a benefit to a person on a basis that infringes his constitutionally protected interests – especially his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." Such interference with constitutional rights is impermissible.

<u>Perry v. Sindermann</u>, 408 U.S. 593, 597 (1972).

Montgomery alleges that he was demoted in retaliation for exercising his rights of free speech and association under the

First Amendment.  It is well-established that a public employee may not be retaliated against for exercising his First Amendment rights.  See Thompson v. City of Starkville, 901 F.2d 456, 460 (5th Cir. 1990).  While Montgomery's First Amendment claims are properly considered Fourteenth Amendment due process claims, the Court shall analyze them separately as First Amendment claims due to the standards unique to First Amendment retaliation claims.  See Pesek v. City of Brunswick, 794 F.Supp. 768, 777 (N.D. Ohio 1992).

     **E.**  **First Amendment**

        **1.**  **Freedom of Association**

Although the plaintiff asserts a freedom of association claim under the First Amendment, he does not specifically allege any association or interaction as the basis for his claim.  Summary judgment is therefore warranted as to this claim.

        **2.**  **Freedom of Speech**

To establish a First Amendment retaliation claim, a plaintiff must show that (1) he suffered an adverse employment action; (2) his speech involved a matter of public concern; (3) his interest in commenting on the matters of public concern outweighs the public employer's interest in promoting efficiency; and (4) his speech was a motivating factor for the adverse employment action.  Bradshaw v. Pittsburg Indep. Sch. Dist., 207 F.3d 814, 815-16 (5th Cir. 2000).  If the plaintiff carries this burden, the employer may nonetheless defeat the plaintiff's claim if it demonstrates by a preponderance

of the evidence that it would have taken the same action even in the absence of the protected conduct.  Lukan v. North Forest Indep. Sch. Dist., 183 F.3d 342, 346 (5ᵗʰ Cir. 1999).

Here, the plaintiff suffered an adverse employment action when he was demoted from captain to lieutenant.  The plaintiff must also show that his speech is entitled to constitutional protection under the First Amendment.  Coughlin v. Lee, 946 F.2d 1152, 1156 (5ᵗʰ Cir. 1991).  Montgomery's speech is so entitled only if it addresses a matter of "public concern" which "must be determined by the content, form, and context of a given statement, as revealed by the whole record."  Id. (citing Connick v. Myers, 461 U.S. 138, 147–48 (1983)).  This determination is a question of law to be resolved by the Court.  Id.

In Rathjen v. Litchfield, 878 F.2d 836 (5ᵗʰ Cir. 1989), a city employee brought a First Amendment retaliation claim alleging that she was discharged because of her opposition to her demotion and her filing of a lawsuit on the basis of the demotion.  The Fifth Circuit held that the employee's actions concerned matters of only personal interest and were not "protected activities" under the First Amendment.  Id. at 842.  In Day v. South Park Indep. Sch. Dist., 786 F.2d 696 (5ᵗʰ Cir. 1985), the plaintiff alleged that her contract was not renewed because she complained about her superior's unfavorable performance evaluation and later filed a grievance.  Id. at 697.  The Fifth Circuit affirmed the district

court's conclusion that "her actions, whether viewed as speech, petitioning, or both, related only to her superior's employment decisions that affected her in a purely personal matter, not to matters of political, social, or community concern." Id.  As the Supreme Court has stated:

> When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. ... [W]hen a public employee speaks not as a citizen upon matters of public interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

Connick, 461 U.S. at 146-47.

The issue is whether Montgomery's letter to the editor was a matter of public concern or a matter only of personal interest. The defendants argue that the letter is related to a personal dispute over raises within the fire department.  The plaintiff bears the burden of producing some evidence to refute the defendants' claim that the speech does not address matters of public concern.  Page v. DeLaune, 837 F.2d 233, 237-38 (5th Cir. 1988).  "Issues rise to the level of public concern if an individual speaks primarily in his role as a citizen rather than as an employee, or if the information conveyed is of 'relevance to the public's evaluation of the performance of governmental agencies." Knowlton v. Greenwood Indep. Sch. Dist., 957 F.2d 1172, 1178 (5th

Cir. 1992)(citations omitted).

In <u>Eudy v. City of Ridgeland</u>, 464 F.Supp.2d 580 (S.D. Miss. 2006), a demoted former sergeant in the city fire department brought a First Amendment retaliation claim alleging that he had been demoted for filing grievances challenging certain components of the fire department's agility tests.  The court found that the content of the plaintiff's grievances implicated matters of public concern because (1) they concerned charges of discrimination within the department, and (2) they addressed safety concerns regarding the manner in which the tests were conducted.  <u>Id</u>. at 585.  The court also cited <u>Salge v. Edna Indep. Sch. Dist.</u>, 411 F.3d 178, 186-87 (5th Cir. 2005), in which the Fifth Circuit held that "if releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance, the content of the speech may be public in nature."

The district court also found that the context of the plaintiff's speech suggested that it involved matters of public concern:

> The grievances did not relate to an employment dispute between Eudy and the Department but, instead, related to the manner in which the Department was being operated as a whole.  The United States Court of Appeals for the Fifth Circuit has found that speech in this context is protected under the First Amendment.  <u>See</u> <u>Modica v. Taylor</u>, 465 F.3d 174, 181 (5th Cir. 2006)(indicating that the context of the plaintiff's speech favored protection as the speech did not relate to an employment dispute involving the plaintiff, but rather involved the operation of the department as a whole); <u>Kennedy v. Tangipahoa Parish Library Bd. Of Control</u>, 224 F.3d 359,

374 (5th Cir. 2000)(finding that the context of the plaintiff's speech was public in nature as the speech did not relate solely to her own job, but instead referred to a safety plan that was aimed at protecting all employees as well as the general public).

Eudy, 464 F.Supp.2d at 585.

The court then addressed the form of the plaintiff's speech. Although the plaintiff "elected to file internal grievances, as opposed to airing his concerns to the public or to the media," this did not "foreclose a finding that his speech was a matter of public concern." Id. at 585 (citing Rankin v. McPherson, 483 U.S. 378, 386-87 n. 11 (1987)). An internal grievance is not a public forum; however, Eudy had also spoken with an alderman and the mayor of Ridgeland regarding his and other firefighters' concerns, which considering the content and context of the speech favored a finding that the speech was protected. Id. at 586. The district court in Eudy cited Modica for its "finding [that], although not dispositive, ... the plaintiff's decision to inform someone outside of her department, favored a finding that the form of her speech was public in nature. Id. (citing Modica, 465 F.3d at 181).

The question before this Court is whether Montgomery's letter was related to matters of individual desires and interests, or a matter of public concern. The context for the letter was in general the upcoming city elections, and in particular the letter to the editor to which Montgomery was responding. The United States Supreme Court has held and "frequently reaffirmed that

36

speech on political views and public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection." <u>Connick</u>, 461 U.S. at 145 (quoting <u>NAACP</u>, 458 U.S. 886, 913; <u>Carey v. Brown</u>, 447 U.S. 455, 467 (1980)). Moreover, "[p]olitical speech regarding <u>a public election</u> lies at the core of matters of public concern protected by the First Amendment." <u>Wiggins v. Lowndes County</u>, 363 F.3d 387, 390 (5th Cir. 2004)(emphasis added).

As for form, a newspaper is a public forum, and letters to the editor are traditional means of communicating with the public. <u>See Pickering v. Board of Ed. of Township High School Dist. 205</u>, 391 U.S. 563 (1968). A review of the content of Montgomery's letter also reveals that the letter addressed a matter of public concern. The letter does not address a personal employer-employee dispute. Montgomery does not claim that he personally is entitled to a raise. In fact, the point of his letter is not even to argue for a raise for the fire department as a whole, but to refute the sentiment expressed in Ms. Langley's letter that "Mayor Leyens appreciated the city employees by giving them a pay raise."

Another fundamental inquiry "[i]n deciding whether a particular statement involves a matter of public concern ... is whether the plaintiff speaks as an employee or as a citizen." <u>David v. City & County of Denver</u>, 101 F.3d 1344, 1355 (10th Cir. 1997)(citing <u>Connick</u>, 461 U.S. at 147). The fact that Montgomery

identifies himself within his letter as a captain with the
Vicksburg Fire Department does not detract from the fact that he
wrote the letter as a citizen addressing matters of public concern.
The defendants have not shown that writing the letter was part of
Montgomery's official duties.   Nothing in the letter states or
suggests that Montgomery's views are shared by other firefighters
or that he was writing on behalf of the entire Fire Department, and
the defendants have adduced no evidence suggesting that Montgomery
was acting as a surrogate for the Fire Department.   The context,
form and content of Montgomery's letter indicate that it was
written in his capacity as a citizen.

The Supreme Court "has acknowledged the importance of
promoting the public's interest in receiving the well-informed
views of government employees engaging in civic discussion."
Garcetti v. Ceballos, 126 S.Ct. 1951, 1958 (2006).  "An employee's
speech may contain an element of personal interest and yet still
qualify as speech on a matter of public concern."   Harris v.
Victoria Ind. Sch. Dist., 168 F.3d 216, 222 (5th Cir. 1999).   At
most, Montgomery's letter merely touches on an element of personal
concern in the broader context of a matter of public concern.

The defendants argue that Montgomery's speech cannot be
protected because it was false, i.e., Mayor Leyens had in fact
given Fire Department employees raises, and Montgomery was not a
resident of Vicksburg and not qualified to vote in city elections.

However, the Fifth Circuit has held:

> Whether the speech in question violates an employer's policy has no relevance to whether the subject matter of the speech is on a matter of public concern.  Whether an employee's speech is true or false also plays no role in the determination whether the speech concerned a matter of public interest.

Salge, 411 F.3d at 185 (citing Denton v. Morgan, 136 F.3d 1038, 1043 (5th Cir. 1998)).  The Court concludes that the form, context and content of Montgomery's letter all support a finding that his speech was on a matter of public concern.

Having found that Montgomery's letter addressed a matter of public concern, the Court must proceed to balance Montgomery's interest in making his statement against the interest of the City, as an employer, "in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568. However, having rested their case on the public concern issue, the defendants have failed to produce any summary judgment evidence to demonstrate how Montgomery's letter resulted in "[i]nterference with work, personnel relationships, or the speaker's job performance." Id.  In short, the defendants have failed to carry their burden on their summary judgment motion.  Moreover, the absence of any evidence of a governmental interest sufficient to outweigh Montgomery's First Amendment rights would mean that summary judgment is warranted in the plaintiff's favor, since it is undisputed that Montgomery was demoted because of his letter to the editor.

In <u>Douglas v. Palmyra-Eagle Area Sch. Dist.</u>, 2000 WL 34228177 (W.D. Wis. Sept. 11, 2000), the court was faced with a similar situation when it determined that the plaintiff's letters to the local newspaper addressed matters of public concern.  The defendants contended that their interest in promoting harmony and efficiency outweighed the First Amendment interests of the plaintiff, but the court found that the defendants had not met their burden on motion for summary judgment because "the record does not adequately support defendants' assertions regarding why they refused to hire plaintiff, or that their justification for refusing to hire plaintiff was reasonable."  <u>Id</u>. at *1.  Although the plaintiff had not filed a counter-motion for summary judgment, the court announced that it was "prepared to enter summary judgment <u>in favor</u> of plaintiff on this point," but would "provide defendants one last opportunity to convince [the court] otherwise."  <u>Id</u>. (emphasis in original).  Seventh Circuit law allows the court "to enter summary  judgment sua sponte 'when the outcome is clear, so long as the opposing party has had an adequate opportunity to respond.'"  <u>Id</u>. (citing <u>Vaughn v. King</u>, 167 F.3d 347, 354 (7th Cir. 1999)(quoting <u>Sawyer v. United States</u>, 831 F.2d 755, 759 (7th Cir. 1987)).  Likewise, the Fifth Circuit allows a district court to grant summary judgment <u>sua</u> <u>sponte</u>, as long as it provides "adequate notice and an opportunity to respond akin to that required by Fed.R.Civ.P. 56(c)."  <u>Mannesman Demag Corp. v. M/V CONCERT EXPRESS</u>,

225 F.3d 587, 595 (2000).  Therefore, the court shall give the defendants an opportunity to more fully address the issues in a memorandum of law showing cause why the Court should not, <u>sua sponte</u>, enter summary judgment for the plaintiff on his First Amendment freedom of speech claim under the substantive (liberty interest) prong of the Due Process Clause of the Fourteenth Amendment.  Furthermore, the plaintiff's state law contract claim for wrongful demotion; freedom of speech claim under Article 3, Section 13 of the Mississippi Constitution; and claim under the substantive (property interest) prong of the Due Process Clause of the Fourteenth Amendment would seem to rise or fall on Montgomery's free speech allegations.  Therefore, the memoranda should also address why the Court should not, <u>sua sponte</u>, enter summary judgment for the plaintiff on these claims as well.

**V.   <u>Defenses</u>**

   **A.   <u>Qualified Immunity</u>**

   The defendants advance the affirmative defense of qualified immunity as a ground for dismissal of the plaintiff's claims.  The defense of qualified immunity represents an "attempt to balance the need to preserve an avenue for vindication of constitutional rights with the desire to shield public officials from undue interferences in the performance of their duties as a result of baseless claims." <u>Pueblo Neighborhood Health Centers, Inc. v. Losavio</u>, 847 F.2d 642, 645 (10th Cir. 1988).  An assertion of qualified immunity requires

evaluation under the standard articulated by the Supreme Court in
Harlow v. Fitzgerald, 457 U.S. 800 (1982).  In Harlow, the Supreme
Court held that "government officials performing discretionary
functions generally are shielded from liability for civil damages
insofar as their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person
would have known."  Id. at 818.

> Reliance on the objective reasonableness of an
> official's conduct, as measured by reference to clearly
> established law, should avoid excess disruption of
> government and permit the resolution of many
> insubstantial claims on summary judgment.  On summary
> judgment, the judge appropriately may determine, not only
> the current applicable law, but whether that law was
> clearly established at the time the action occurred.  If
> the law at that time was not clearly established, an
> official could not ... fairly be said to "know" that the
> law forbade conduct not previously identified as
> unlawful.

Id. (footnotes and citations omitted).  In short, the touchstone of
the defense is "objective legal reasonableness."

Following the Harlow analysis on qualified immunity, there is
no dispute that as to the first prong the defendants were
"government official[s] performing a discretionary function."
Harlow, 457 U.S. at 818.  The inquiry thus turns to the second
Harlow prong – whether the defendants violated "clearly established
statutory or constitutional rights of which a reasonable person
would have known ... ."  Id.  Therefore, the issue before the Court
is (1) whether the plaintiff has alleged a deprivation of federal
rights sufficient to state a claim under 42 U.S.C. § 1983 and, if

42

so, (2) whether those rights were clearly established at the time of the deprivation.

"It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." Rankin v. McPherson, 483 U.S. 378, 383 (1987).  In this case, it has been determined that Montgomery's speech touched upon a matter of public concern, and that he has alleged a deprivation of federal rights sufficient to state a claim under 42 U.S.C. § 1983.  The question then becomes whether a reasonable official would have known that the plaintiff's First Amendment interests outweighed the City's interests in efficient operation of the Fire Department under the facts of this case.  Where the government officials "do not have relevant, legitimate interests to put on their side of the Pickering scales, ... it is entirely appropriate to deny qualified immunity when the balance of cognizable interests weighs so starkly in the plaintiff's favor."  Kinney v. Weaver, 367 F.3d 337 (5th Cir. 2004)(citing Boddie v. City of Columbus, Miss., 989 F.2d 745, 750 (5th Cir. 1993); Frazier v. King, 873 F.2d 820, 826 (5th Cir. 1989).  Given the current posture of this case, qualified immunity is not available to the defendants.  Upon filing their responsive memorandum of law, the defendants may re-urge their claim of qualified immunity.

43

B.  __Municipal Liability__

    The defendants also argue that the municipal defendants (the City of Vicksburg and the individual defendants sued in their official capacities) are entitled to summary judgment because the plaintiff has failed to establish a municipal policy or custom which resulted in the alleged constitutional violation.  See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Bennett v. City of Slidell, 728 F.2d 762 (5ᵗʰ Cir. 1984)(en banc)(1975).  In support of this argument, the defendants offer the following:

> In his Complaint, Plaintiff admitted that Defendants informed him that his letter to the editor was in violation of Mississippi Codes [sic] Section 21-31-27, which prohibits civil service employees from becoming actively involved in political activity in the municipality where the civil service employees are employed.  Exhibit "A" ¶ 10.  The statute provides that such political involvement is cause for removal. Mississippi Codes [sic] Section 21-31-27.  Chief Rogers testified that he recommended that Plaintiff be demoted and suspended because he violated Mississippi laws and Civil Service Commission Rules and Regulations regarding civil service employees' political activity. Exhibit "H" at 9-14, 17-22, 25-26, 51.  These are policies of the State of Mississippi, not of the City of Vicksburg which simply was following state law.

Defendants' Memorandum in Support of Motion for Summary Judgment, p. 17.

    The defendants fail to acknowledge that a municipal policy or custom can co-exist with a separate state policy.  Moreover, they fail to address the concept that "an unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of

the government's business." <u>City of St. Louis v. Praprotnik</u>, 485

U.S. 112, 121 (1988).  In <u>Milam v. City of San Antonio</u>, 113 Fed.

Appx. 622, 2004 WL 2469572 (5th Cir. 2004), the Fifth Circuit

summarized the concept as articulated by the Supreme Court in

<u>Praprotnik</u>:

> [I]n <u>Praprotnik</u>, the Supreme Court described a scenario
> in which a municipality could be held liable for a single
> episode of conduct initiated by a non-policymaker
> employee.  The plaintiff in <u>Praprotnik</u> claimed that his
> supervisors in the city government had retaliated against
> him, and, through the supervisors' actions, he hoped to
> hold the city itself liable.  Looking to state law, the
> plurality opinion determined that the municipality's
> policymaking authority over employment was vested in the
> mayor, the aldermen, and the civil service commission,
> but not in the plaintiff's supervisors.  485 U.S. at 124-
> 26, 128-29, 108 S.Ct. 195.  It therefore rejected the
> plaintiff's claim, but in the course of doing so it noted
> certain factors that could have changed the outcome:

>> It would be a different matter if a particular
>> decision by a subordinate was cast in the form
>> of a policy statement and expressly approved
>> by the supervising policymaker ....  In [such
>> a case], the supervisor could realistically be
>> deemed to have adopted a policy that happened
>> to have been formulated or initiated by a
>> lower ranking official.

> <u>Id</u>. at 130, 108 S.Ct. 915.  Elsewhere, the opinion
> included the following comments about how a policymaker
> could "ratify" a subordinate's illegal conduct, thus
> putting the force of municipal policy behind it:

>> [W]hen a subordinate's decision is subject to
>> review by the municipality's authorized
>> policymakers, they have retained the authority
>> to measure the official's conduct for
>> conformance with <u>their</u> policies.  If the
>> authorized policymakers approve a
>> subordinate's decision and the basis for it,
>> their ratification would be chargeable to the
>> municipality because their decision is final.

45

Id. at 127, 108 S.Ct. 915.

> This sort of ratification is most readily
> conceptualized in contexts like employment. For example,
> if a school board – a policymaker under Monell – approves
> a superintendent's decision to transfer an outspoken
> teacher, knowing of the superintendent's retaliatory
> motive for doing so, the governmental entity itself may
> be liable; but if the school board lacks such awareness
> of the basis for the decision, it has not ratified the
> illegality and so the district itself is not liable. See
> Beattie v. Madison county Sch. Dist., 254 F.3d 595, 603–
> 05 (5ᵗʰ Cir. 2001)(discussing and distinguishing Harris
> v. Victoria Independent School district, 168 F.3d 216,
> 225 (5ᵗʰ Cir. 1999)).

Milam, 113 Fed.Appx. at 626. In light of the foregoing, the Court

cannot grant summary judgment in favor of the municipal defendants

on the basis of an absence of a policy or custom.   The defendants

are granted leave to re-urge this portion of their motion in

responding to the Court's show cause order.   Accordingly,

IT IS HEREBY ORDERED that the motion for summary judgment

**(docket entry 27)** filed by defendants City of Vicksburg, and

Laurence E. Leyens and Sidney Beauman in their individual and

official capacities, is GRANTED IN PART and DENIED IN PART as

follows:

GRANTED as to the following claims: (1) state law tort claim

for wrongful demotion; (2) claim under the Fifteenth Amendment to

the United States Constitution; (3) claim under the Fifth Amendment

to the United States Constitution; (4) claim under Article IV,

Section 2 of the United States Constitution; (5) claim under the

Equal Protection Clause of the Fourteenth Amendment to the United

States Constitution; (6) claim under the procedural prong of the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

DENIED as to the following claims: (1) state law contract claim for wrongful demotion; (2) state law claim under Article 3, Section 13 of the Mississippi Constitution (freedom of speech); (3) claim under the substantive (property interest) prong of the Due Process Clause of the Fourteenth Amendment; (4) First Amendment freedom of speech claim under the substantive (liberty interest) prong of the Due Process Clause of the Fourteenth Amendment;

FURTHER ORDERED that the defendants shall file a memorandum of law to show cause why summary judgment should not be entered against them on the plaintiff's First Amendment freedom of speech claim under the substantive (liberty interest) prong of the Due Process Clause of the Fourteenth Amendment; the plaintiff's state law contract claim for wrongful demotion; the plaintiff's freedom of speech claim under Article 3, Section 13 of the Mississippi Constitution; and the plaintiff's claim under the substantive (property interest) prong of the Due Process Clause of the Fourteenth Amendment.  The memorandum shall be due ten (10) days following the date of entry of this Memorandum Opinion and Order. The plaintiff shall have ten (10) days from his receipt of the defendants' memorandum to file a memorandum in opposition thereto;

FURTHER ORDERED that the parties are to submit complete

copies, and not excerpts, of all depositions previously submitted to the Court, and all additional depositions, if any, submitted with the additional memoranda.

SO ORDERED, this the __6th__ day of July, 2007.

____s/David  Bramlette_____
UNITED STATES DISTRICT JUDGE